Good morning. May it please the court, Florence Weinberg on behalf of Petitioner Jose Lemus, I'll attempt to reserve two minutes for rebuttal. After living for nearly two decades in the United States, Mr. Lemus pleaded guilty to giving a false statement to a federal officer in reliance on this circuit's law. In 2011, when Mr. Lemus was pleading guilty, the law of this circuit, according to Cuevas Gaspar and Mercado Sasueta, allowed a lawful admission of a parent to be imputed to a minor child to satisfy the continuous residence requirement for cancellation of removal. This was unambiguous, and it gave Mr. Lemus an opportunity to stay in this country. So the principal issue is whether or not the Supreme Court's decision in Holder v. Martinez, which abrogated this court's decisions in Cuevas and Mercado and was decided while Mr. Lemus's case was before the Board of Immigration Appeals, applies retroactively to Mr. Lemus. So there are two possible tests. The Chevron oil test or the Montgomery Ward test applies retroactively in this case. So with respect to which analysis is the most appropriate one, Chevron oil or Montgomery Ward, we believe that the Chevron oil test applies, because this is a civil case, a new rule of law has been announced, the rule does not concern jurisdiction. So here... The second point is the second one, right? That whether this is a new rule that's being announced. Yes, Your Honor. That goes to the first factor. Right, right. And Justice Kagan's decision was essentially a unanimous decision. And if you... The tone of the decision seems to be that this was a rule that was obvious that should have been recognized and actually was recognized by two other circuits prior to that time. So I'm really focused on how you characterize this as a new rule. As a new rule. Yes, Your Honor. So I think the bottom line is that when Mr. Lemus pleaded guilty, the governing law at that time allowed imputation. And so now it doesn't after Martinez. And so this means that Martinez is a new rule. The Supreme Court explains in Chevron oil, for example, that a new principle of law is established when clear past precedent on which Mr. Lemus relied. And so in Nunez-Reyes, if you look to that decision where the court applied the Chevron oil test, it held it was establishing a new principle of law because it was overruling its own precedent in Lujan. And so in this case, Martinez is overruling Cuevas and Mercado, its past precedent upon which Mr. Lemus relied. Right. But the Supreme Court is not overruling its own prior precedent. It's clarifying a split in the circuits with regard to this interpretation. Are you saying that every time the Supreme Court grants certiorari and clears up a dispute between the circuits, that clarification amounts to the announcement of a new rule? I don't know if it would in every case. I think I think Your Honor is correct. And I would add that the Supreme Court is correcting the Ninth Circuit. It's a higher court correcting the Ninth Circuit. And that's precisely the situation where Chevron oil says that, you know, this test should be applied. And so that a new principle should... May I ask you, how does our en banc decision, Garfias-Rodriguez, fit into your analysis? Garfias, I think, is helpful in several regards. I think it helps us understand the Montgomery Ward test, the Chevron oil test. On page 517, I think it has a great discussion about which test to choose. And Garfias chooses the Montgomery Ward test to determine whether the rule in that case, Briones, should be applied retroactively. Why wouldn't that militate that we choose the Montgomery Ward test in this case? I happen to be on that panel. And in that case, the distinction that we made was between whether or not a court is making law or is giving deference to agency law. And if the court is giving deference to agency law, the court is not taking any action on its own. It's just giving deference to agency law. Why doesn't that analysis apply here where the Supreme Court is saying we should give deference to the interpretation that's being rendered by the agency with expertise in this area? Why doesn't our rationale in Garfias control? Well, I think, first, the language I pointed to in Chevron oil, but also, matter of Escobar was never binding precedent in this circuit until Martinez said that it was. And so I think that's really the crux of... Does that make a difference if at the crux of the issue is deference to a BIA decision rather than either the Supreme Court or this court rendering a holding or a decision of law? Well, I think that one way to look at it is if in the court's decision in Mercado when it was deciding whether or not matter of Escobar was binding, whether the Ninth would defer to matter of Escobar, we'd be in the same situation as Garfias procedurally because Mercado was deciding whether or not to defer to matter of Escobar. So in that case, the Montgomery award test would govern. Here, however, again, matter of Escobar was never binding in the circuit until the Supreme Court ordered that, abrogated JVAS in Mercado. As I see it, counsel, your best argument is that at the time that your client entered a plea, binding law in the circuit allowed for imputation. So therefore, he was entitled to rely on that, right? But at the same time, there's no question that at least nationwide, this issue was rather unsettled. Even within the Ninth, although binding law does allow for imputation, there was clearly disagreement with the BIA. That coupled with outside circuit's contrary view of this issue, why doesn't that make it unsettled enough such that his reliance on existing law is not reasonable? Your Honor, I think whether the standard, first of all, is whether Mr. Lemos reasonably relied. And I think what we have is Mercado was binding authority in the circuit. I understand that. It's binding within the circuit. But clearly, if you take a step back, you see that it's a hot issue within the circuit, right? Ultimately culminating in the Ninth BIA strongly disagreeing with that, with other circuits taking a contrary view. Is there authority that we can limit ourselves, the president within the circuit versus taking a step back and assessing reasonableness in light of what's happening in this area nationwide? Well, I don't think so, Your Honor. I think one case that the government cites to, and I hope this addresses your question, is Correo de Palacios. And they cite that case for the vulnerability of CUEVAS. But that case was very different. In that case, there was a Ninth Circuit decision and a contrary BIA decision. But the Ninth Circuit had not decided yet whether or not it was going to defer to the BIA decision. So there, yes, there was ambiguity. And the Montgomery Ward test was applicable there. But we have a very different case. Ambiguity, if there's ambiguity in the Ninth Circuit, just the Ninth Circuit, is that your argument? Ambiguity with respect to reasonable reliance, because that's what we're looking to. But you're saying you look only to the Ninth Circuit law? With respect to whether Mr. Lemos is reasonably relying, yes, Your Honor. That's what Judge Wynn was asking. Is there a case that says you can take that closer look at ambiguity and disregard all of the other legal developments, including within the Ninth Circuit, the agency that administers the law? What case allows you to be that nearsighted? Well, Your Honor, I think if you look at Nunez-Reyes and the reliance of the petitioner in that circuit that disagreed with Lujan and a BIA decision that disagreed with Lujan, but this court held, applying the Chevron oil test, that it was reasonable for the petitioner in that case to rely on binding Ninth Circuit precedent, law in this circuit. And so I think Nunez-Reyes answers that question. Could you just take a minute at some point to tell me how you think you satisfy the Montgomery Ward test? You say that Chevron is the applicable test, but that you also satisfy the Montgomery Ward test. I'd like to hear a little about that. Yes, Your Honor. Again, even if... I don't believe it's crystal clear which test applies, Chevron oil or Montgomery Ward. It's not crystal clear how helpful either one of the tests is anyway. Yeah. But if the court is inclined to apply the Montgomery Ward test, we believe the balance of the factors still weigh in favor of not applying Martinez retroactively. So quickly just to go through those. The first factor is not suited to this situation, so I'll go to the second. Martinez does represent an abrupt departure from well-established practice. Again, before Martinez, matter of Escobar had never been binding in this circuit. And imputation theory had been used not just in this context for years, but in other areas of immigration law. We discussed those other areas on page nine of our reply. This court goes into that as well in Mercado, and so does Martinez. So Martinez completely overruled prior Ninth Circuit precedent. And so that means that Martinez was not simply a development in the law. It was a decision that was completely contrary to what this court had held prior. The third factor asks the court to examine the extent of reliance on the rule. And had Mr. Lemos and his criminal defense attorney known that pleading guilty to a false statement would have essentially guaranteed his removal, this most certainly would have affected the decisions that were made. And the government argues that after a matter of Escobar, Mr. Lemos would not be a threat to any of us' vulnerability because there was that contrary decision. But that statement completely ignores Mercado's suspueta. And just to take a step back for a moment from those factors, I think more importantly, with respect to reliance, decisions had to be made in Mr. Lemos' criminal case. What law was he supposed to rely on? What law was his attorney supposed to rely on in determining how to advise him? And I think this court recently in Ocosta Olivaria sent a very strong message in their opinion on page 1276. This was the subject of our 28J letter. The court states, when we announce a legal rule, we do so not only for the benefit of courts, but also for the benefit of the general public. People within the Ninth Circuit should be able to rely on our opinions in that regard. It sounds to me as though the pivotal issue in both Chevron and Montgomery Ward amounts to something of the same. I mean, the new rule in Chevron equals the abrupt departure in Montgomery Ward. So we're still focusing on the question of whether what happened in Martinez constituted an abrupt departure or a new rule, which to me at least sounds like first cousins, if not exactly the same thing. That's where our attention should be. I think that's correct, Your Honor. If I could reserve the remainder of my time. Thank you, Counsel. Good morning, Your Honors. May it please the Court, I'm Carmel Morgan on behalf of the government prevails. Chevron oil applies in situations when a court overrules itself, and it does not apply to situations in which a higher court has overruled a lower court, which is what happened with Martinez Gutierrez. So Chevron oil is not an appropriate test for this case. I realize our brief argued that Garfield, Rodriguez, and Montgomery Ward offered the solution about retroactivity. I was not the author of the brief, and having looked carefully at the brief and the case law, I think really the strongest argument is that Harper Rivers takes the day in this case, and that we would apply the general presumption of retroactivity. I think you've hit a... What case is that? Excuse me? What case is that? Garfield, Rodriguez? No, I thought you said... What did you say carries today? Oh, Harper and Rivers. Okay. The U.S. Supreme Court cases. I think you've hit the nail on the head with regard to the key issue here being whether or not the Supreme Court's decision in Martinez Gutierrez announced new law. In one way it does, sort of, and in one way it doesn't. Clearly... What is your best case for the proposition that where there's clear binding authority within the circuit, that someone who relies on that law in entering a plea of guilty, that's unreasonable because his counsel should have researched outside of the circuit to determine that there's a circuit split. What case do you have that supports that notion? I don't have a particular case that supports that notion, but I have two comments that maybe will help address the question. First, I think the guilty plea is a little bit of a red herring in this case. The petitioner wasn't ordered removed because of the guilty plea. He wasn't ordered removed on the basis of his conviction. He was removed on the basis of conduct. And at the time he entered the guilty plea, he hadn't even been charged with removability yet. I think at the time that he put in his application, what was the existing precedent within the Ninth that imputation was allowed, correct? Right. No, I think the time that he put in his application would be the trigger point. And it doesn't make any difference in this case because the binding precedent is the Ninth Circuit's decisions in Cuevas and Mercado. I agree with that. But the second point I was going to make is that any petitioner, any litigant relying on Ninth Circuit case law runs the risk of having a higher court, in this case the Supreme Court, overturning that law. But the question becomes, is that retroactive? The issue is whether or not he reasonably relied on the state of the law as it existed. So to say that the Supreme Court may overturn it doesn't necessarily answer the question as to whether the reliance was reasonable at the time. To me, that means we have to look at what the state of the law was at the time. Was there any indication that reversal was imminent or lurking or reasonably to be anticipated? I entirely agree. If you're going to consider equitable considerations in this case, if you're going to look at, for example, the Montgomery Ward analysis, then reliance is critical. I think in this case you had a cert petition pending at the time that he filed his cancellation application and you had the circuit split. You're right, I don't know of a particular case that says you need to look nationwide, but this is a The Ninth Circuit agreed with what the board said, but the board's pronouncement was the first time the board was on record. The Ninth Circuit did not agree with what the board said. Right. Okay. Correct. The government cites and relies on Creo de Palacios, and I think that analysis is helpful and helpful, I think, in favor of the petitioner in this The BIA says, no, we don't think you're right about that. Leaving the area of law unsettled, and there's analysis in that as to why reliance was not reasonable under those circumstances, and that the fact that the BIA had issued a contrary decision really places the petitioner on notice as to the vulnerability of that precedent. So I'm looking at the factual situation in this case, and it seems very, very different because there was a disagreement, but then the Ninth Circuit followed up once again and said the BIA was wrong, imputation is allowed. That is as clear of a binding precedent as you can possibly have. So why doesn't that help the petitioner in this case? Again, if you're not going to I think the reliance in this case... Well, even with the presumption of retroactivity, let's give the government that as an assumption. You know, you've got a clear binding precedent after a whole history of disputes or disagreements between the BIA's analysis and the Ninth Circuit. Why can't the petitioner come into court and say, I've got this clear binding case law at the time that I put in my application. I ought to be able to rely on it. What is wrong with that in terms of the reasonableness analysis? Now, you mentioned the CERT petition, and I'm just not aware... And the circuit split. Well, and that gets to the question of what case the government relies on that would counsel us to analyze it on that level to say, hey, before you decide whether to rely on circuit precedent, you better go outside the circuit and research and figure out what other circuits are doing. You better look at whether CERT petitions are pending and assess the likelihood of a grant. I just am not aware of any authority that requires us to do that. I'm not either. Or that from a fairness standpoint would dictate that sort of result. But the BIA decision certainly is known to... Within the Ninth Circuit, the BIA decision would be known. So that's a clear conflict at that point. Correct. Let me just nudge you a little bit. We may need to come back to what we're discussing now, but do you agree that if we find that this was prospective only and remand, we ought to order them to produce the A file? Because it's still not clear that Mr. Lemus is safe even if we do remand. It's not clear that his stepfather's position here is imputable or is going to help him. Just assuming we agree with your sister, shouldn't we also order the BIA to produce the A file so we can look it over and have a shot at least on remand if we do remand? Unfortunately, the board in this case didn't address that issue. And so I can't speak on the behalf of the Attorney General. You would have to remand and ask the board to address that situation. They didn't because they said the imputation rule does not apply. Okay. I thought that one of the issues before us was whether the BIA erred in finding that he did not suffer prejudice as a result of that. It was raised as an issue, but the board didn't address it. I see. So it would have to go back to the board to address in the first instance. It would be hard not to find that he suffered prejudice if we agree with your opponent here. Don't you agree? It would seem so. Again, I really think that the strongest argument on behalf of the government is that the Supreme Court in correcting the Ninth Circuit, that wasn't announcing new law because they're giving deference to the board, but it's a new effect on Ninth Circuit rule. The Ninth Circuit has no choice in that situation but to apply the Supreme Court's reasoning and that's what they did. In Sawyers and Martinez-Gutierrez, in cases that have already been sent back to the Ninth Circuit in light of Martinez-Gutierrez, this court didn't discuss retroactivity and went ahead and applied the new law. I think the concern in Harper was that you don't want to have selective application of retroactivity. You don't want to have this the highest court has already applied the law and so I think that the government's strongest argument is that you just don't reach those equitable considerations in this case. Can you take me through your analysis? You mentioned that the way we should look at this case is to rely on the presumption of retroactivity. So we apply the presumption that says how would a petitioner overcome that presumption? What sorts of arguments or evidence does the In that situation, the Supreme Court in Harper said you don't resort to Montgomery Ward or Chevron Oil. You don't look to those types of tests. It's simply retroactive. So it's an irrebuttable presumption? I think in a situation when you have the Supreme Court correcting a lower court, it is in this case. So what's the language in Harper that you're relying on that tells us that the presumption cannot be rebutted? Could you point me to the specific language in Harper you're relying upon? Let's see. The language I have that I'm thinking of was expressing concern about the uneven application of a newly announced rule to different disparate parties. Should we be concerned about or taking into consideration the fact that Mr. Martinez was in the same position as Mr. Lemus? In other words, he relied on the Ninth Circuit and he went up to the Supreme Court and he's out of luck. He's gone. So if Martinez hadn't been decided and the Lemus case had been decided, and the one that the government chose to take up to the Supreme Court, and the Supreme Court made the exact same decision in my hypothetical Lemus case as it made in the Martinez case, Mr. Lemus would be out of luck. He wouldn't be in a position to say, gosh, I relied on Ninth Circuit law because the Supreme Court of the United States would have said, sorry, you were wrong and your situation requires us to uphold the BIA's decision. Should I look at, should I compare the two of them? Is that an argument that helps the government there? I mean, it just seems to me that Mr. Lemus is lucky that his case is not the one that got appealed. Mr. Martinez was out of luck because his did. That's exactly the argument I'm attempting unsuccessfully to make, and I have Harper before me, and I'm trying to find the language that I'm speaking of. Page 98 might be what you're thinking about. It says, the legal imperative to the defense announcing the rule has already done so, must prevail over any claim based on a Chevron oil analysis. Is that what you're thinking about? That is the language indeed. Thank you for being able to find that quickly. Perhaps retroactivity wasn't discussed in Martinez-Gutierrez or in the cases that were remanded pursuant to Martinez-Gutierrez because it's just not an issue. But it was certainly applied. Right. It certainly was applied by this court. I can't say because I don't have, didn't have access to the briefs whether retroactivity was raised. I think it wasn't, and maybe it wasn't because it's presumed when the Supreme Court overrules the Ninth Circuit, it's retroactive. If there are no further questions, the government asks that you deny the petitions over the air. Thank you counsel. Thank you. Rebuttal. Thank you. With respect to Harper, this court in Nunez-Reyes addresses this issue directly on page 691. The Nunez-Reyes majority explained the Supreme Court did not overrule the Chevron oil test in this context. And in this circuit, we're still bound by Chevron oil. And every court that's decided this issue has concluded that Chevron oil still applies. With respect, going back... What if Montgomery Ward applies? I'm sorry, Your Honor? What if Montgomery Ward applies? If Montgomery Ward applies, Your Honor, then as I explained going through the factors, I believe we still end up in the same place. I think if you distill out the factors in Chevron oil and Montgomery Ward practically speaking, we end up in the same place. Well, it made a difference to the en banc court. We didn't see them as being the same. We went through a lot of trouble to distinguish them and decide which one should apply. So I'm not sure I agree that you end up the same place regardless of which one you apply. Well, I think when the factors in this case are examined, Your Honor, we do the same result is that Martinez should not apply retroactively. With respect to the new rule that we were discussing and trying to determine whether this is a new rule, I think Nunez-Reyes and Acosta-Olivarria are helpful in understanding that. Again, Nunez-Reyes applied Chevron oil. Acosta-Olivarria applied Montgomery Ward. In both of those cases, the new rule was not applied retroactively. So our position is that Martinez should not be applied retroactively. We believe that remand to the BIA is warranted to allow consideration of whether the years of residence of Mr. Lamos' stepfather can be imputed given that he was given deferred enforcement departure. We would also remand to allow the board to ask to consider whether his stepfather's A file should have been produced. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: Ponsor, Rawlinson, Nguyen